UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
X--------------------------------------------------------------X

IRFAN ASHRAF, individually and on behalf of all others similarly situated,

         Plaintiffs,

-Against-

LABORATORY CORPORATION OF AMERICA HOLDINGS, THE CITY OF NEW YORK & MEERA JOSHI.

         Defendants.

X--------------------------------------------------------------X

__-CV-__ (___)

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Irfan Ashraf, Individually as to defendant Laboratory Corporation of America Holdings (LabCorp) and on behalf of all others similarly situated as to defendants The City of New York (the City) and Meera Joshi, by his attorney Daniel L. Ackman and for his complaint, allege as follows:

## NATURE OF THE ACTION

1. On January 12, 2016, Mr. Ashraf, January 2016, MR. Ashraf, a taxi driver licensed by the City of New York's Taxi and Limousine Commission (TLC) submitted to a suspicionless drug test mandated by the TLC and conducted by LabCorp. Sometime after, the TLC accused Mr. Ashraf of testing positive for marijuana and, pursuant to TLC policy and practice, suspended his license without any pre-suspension hearing and without any finding that his continued licensure presented a threat to public safety. This test result was, in fact, caused by a mistake: the urine sample that LabCorp tested was not from Mr. Ashraf at all. But before acknowledging this faulty testing, the TLC stalled the process leading to the admitted error and, as a result, Mr. Ashraf's license was suspended for approximately 11 months.

## JURISDICTION AND VENUE

2. This action arises under the New York law as to LabCorp.

3. As to the City and Meera Joshi, it arises and under the Fifth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983, under the New York State Constitution, Article 1, § 12 and under New York law..

4. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1332, 1343(4), 1367, 2201. The matter in controversy exceeds the sum or value of $75,000.

5. The acts complained of occurred in part the Eastern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b). Plaintiff resides in the Eastern District of New York. The Taxi and Limousine Commission's maintains its headquarters in the Southern District of New York, but its largest office and principal place of business is in the Eastern District of New York.

## JURY DEMAND

6. Plaintiffs demand trial by jury in this action.

## PARTIES

7. Mr. Asraf is a resident of Kings County.

8. LabCorp is a Delaware Corporation headquartered in North Carolina.

9. Defendant Meera Joshi is the Chair of the Taxi and Limousine Commission. She has overall responsibility for enforcing TLC policy. She is responsible for implementing and overseeing the policies of the Commission and for ensuring that TLC personnel obey the Constitution and Laws of the United States and of the State of New York.

10. Defendant City of New York is a municipality of the State of New York, which includes the TLC as an administrative agency. Collectively Joshi and the City are referred to as the City defendants.

## CLASS ACTION ALLEGATIONS

11.     The following class action allegations pertain to plaintiff's claims against the City and Joshi.

12.     The plaintiff class seeks a (i) declaration that the TLC policy of summarily suspending licenses is unconstitutional; (ii) an order enjoining defendants from suspending licenses prior to affording taxi drivers proper and meaningful hearings on the merits; (iii) an order mandating that unlawfully suspended licenses be reinstated; and (iv) compensatory and punitive damages.

13.     Plaintiff sues on behalf of himself and all other similarly situated individuals who the TLC has suspended without a hearing or a finding based on an alleged positive drug test pursuant to Rule 23 (a), Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

14.     The members of the class and each subclass are so numerous as to render joinder impracticable. Upon information and belief, based on prior sworn statements by TLC officials, there are more than 100 drivers whose licenses have been suspended based on a positive drug test prior to hearings on the merits. In addition, there are more than 100,000 taxi and for-hire vehicle drivers licensed by the TLC, all of whom are subject to the TLC's license suspension and revocation policies. The vast majority of New York City taxi drivers are foreign born, most from countries with no tradition of civil rights.

15.     Upon information and belief, joinder is impracticable given the number of absent class members and because many members of the class are low-income persons, many of whom do not speak English as their first language and likely would have great difficulty in pursuing their rights individually.

16.     The questions of law and fact common to the class and both subclasses include whether the class members have common rights under the Fifth and Fourteenth Amendments to

be free from unconstitutional license suspensions.

17. The named plaintiff is an adequate representative of the class. The violations of law alleged by plaintiffs stem from the same course of conduct by defendants, which violated and continue to violate the rights of members of the class; the legal theory under which the named plaintiffs seek relief is the same or similar to that on which the class will rely. In addition, the harm suffered by the named plaintiffs is typical of the harm suffered by absent class members.

18. The named plaintiff has the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the class. Counsel for the plaintiff knows of no conflicts among members of the class.

19. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because: (a) the prosecution of hundreds of separate actions would be inefficient and wasteful of legal resources; (b) the members of the class may be scattered throughout New York City and State and are not likely to be able to vindicate and enforce their constitutional and statutory rights unless this action is maintained as a class action; (c) the issues raised can be more fairly and efficiently resolved in the context of a single class action than piecemeal in many separate actions; (d) the resolution of litigation in a single forum will avoid the danger and resultant confusion of possible inconsistent determinations; (e) the prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to individuals pursuing claims against defendants which would establish incompatible standards of conduct for defendants; (f) defendants have acted and will act on grounds applicable to all class members, making final declaratory and injunctive relief on behalf of all members necessary and appropriate; and (g) questions of law and/or fact common to

members of the class especially on issues of liability predominate over any question, such as that of individual damages, that affect individual members.

## FACTS

20. Though there is no New York state or city statute specifically authorizing or requiring the practice, TLC rules require all taxi and for-hire vehicle drivers (collectively, drivers) to submit to an annual suspicionless drug test.

21. There is likewise no TLC rule (and no City statute) that authorizes the TLC to suspend a driver based on a reportedly positive drug test.

22. The TLC practice is to suspend any driver it deems to have tested positive for illicit drugs without a hearing of any kind regardless of whether there is any indication that the driver was ever impaired while on duty or is addicted to drugs.

23. The TLC rule on which the agency relies says it "can summarily suspend a License if the Chairperson believes that continued licensure would constitute a direct and substantial threat to public health or safety, pending revocation proceedings."

24. In fact, the TLC suspends without any finding, belief or knowledge on the part of the Chairperson.

25. The TLC contracts with LabCorp to perform annual drug testing for all taxi and for-hire vehicle drivers licensed by the agency.

26. LabCorp knows that a positive drug test report will cause the TLC to suspend he license of any driver who has tested positive and also knows that the TLC will also seek to revoke the licenses of those drivers.

27. Mr. Ashraf, who was at the time a yellow taxi driver licensed by the TLC, submitted to a drug test, as is mandated by TLC rules, at a LabCorp facility on or around January

12, 2016.

28. The TLC suspended Mr. Ashraf's license on or around January 14, 2016. But it did not afford him notice of why he was suspended and did not schedule a hearing.

29. At the time of his suspension, Mr. Ashraf had been licensed for approximately 20 years and had passed multiple drug tests.

30. On or around January 27, 2016, Mr. Ashraf took another drug test, performed by BioReference Laboratories. The results were negative for marijuana and the eight other illicit drugs for which he was tested. The TLC's practice, however, is to give no weight to any test other than LabCorp's.

31. The TLC did not inform Mr. Ashraf of his suspension in writing until March 3, 2016 approximately 49 days after the failed drug test results were forwarded to TLC 2016. This delay is in plain violation of TLC Rule 68-15, which requires written notice within five days of a summary suspension. This letter summoned Mr. Ashraf to a hearing on March 10, 2016 to determine whether his license should be revoked.

32. The March 3, 2016 letter cited TLC Rule 68-14 and NYC Admin. Code § 19-505(l), apparently as grounds for a possible license revocation. Neither provision, however, makes any mention of drug testing or use of drugs as a revocable offense.

33. On March 10, 2016, the TLC agreed to an adjournment to Mr. Ashraf's hearing so he could order additional tests to determine whether the urine that LabCorp tested was actually from Mr. Ashraf. Though his revocation hearing was adjourned, the TLC continued Mr. Ashraf's suspension.

34. Mr. Ashraf, through counsel, requested that the TLC provide the urine tested by LabCorp so he could submit it for DNA testing.

6

35. The TLC refused to provide that sample unless Mr. Ashraf obtained a subpoena signed by an administrative law judge, thus delaying the testing and extending Mr. Ashraf's suspension.

36. On or about June 23, 2016, a City administrative law judge signed a subpoena and directed the TLC to notify LabCorp to release Mr. Ashraf's urine sample to another laboratory of Mr. Ashraf's choosing for DNA testing.

37. On or around_August 12, 2016, Mr. Ashraf's sample was delivered from LabCorp directly to _Mitotyping Technologies, the company retained by Mr. Ashraf at his own expense.

38. On or around September 30, 2016 counsel for Mr. Ashraf and counsel for the TLC met an jointly opened the enveloped containing the DNA test results conducted by Mitotyping Technologies. Those results confirmed that the sample tested by LabCorp did not match Mr. Ashraf's DNA, meaning the sample tested was not his urine.

39. Nevertheless, the TLC did not reinstate Mr. Ashraf's license on that date.

40. On October 21, 2016, the TLC agreed to withdraw its petition to revoke Mr. Ashraf's license. But TLC insisted that his license remain on suspension until Mr. Ashraf took and passed another drug test.

41. On or about November 2, 2016, Mr. Ashraf submitted to a drug test at a LabCorp facility. That test was completed on around November 4, 2016 and the results were negative. Neither LabCorp nor the TLC, however, informed Mr. Ashraf of those results until around November 16, 2016.

42. On November 18, 2016 Mr. Ashraf went to the TLC offices in Long Island City to ask why TLC had reinstated and mailed him his license. He was told that his records were not updated.

43.     Mr. Ashraf's taxi driver's license was finally reinstated on December 8, 2016.

44.     Mr. Ashraf filed a notice of claim with the NYC Comptroller on or around February 10, 2017. Apart from acknowledging receipt, the Comptroller made no response to the notice.

### FIRST CLAIM FOR RELIEF / NEGLIGENCE AGAINST LABCORP

45.     Plaintiff repeats and re-alleges paragraphs 1 through 44 as if the same were fully set forth herein.

46.     Defendant LabCorp, through its negligence, failed to insure that the chain of custody for plaintiff's urine sample was properly maintained, which resulted in the wrong sample being tested and a false report to the TLC that Mr. Ashraf had tested positive for marijuana.

47.     This false report caused the TLC to suspend Mr. Ashraf's license.

48.     Due to LabCorp's negligence, plaintiff suffered damages of an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF 42 U.S.C. § 1983 – DUE PROCESS – SUSPENSIONS WITHOUT HEARINGS – AGAINST THE CITY DEFENDANTS

49.     Plaintiffs repeat and re-allege paragraphs 1 through 48 as if the same were fully set forth herein.

50.     By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice, and custom pursuant to which taxi and for-hire vehicle drivers may have their licenses summarily suspended without any hearing and without any finding that the driver poses a direct and substantial threat to public safety, the City defendants have deprived plaintiff and will continue to deprive each and every plaintiff and all members of the plaintiff class of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States in violation of 42 U.S.C. § 1983,and of rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments

of the United States Constitution.

51. The City defendants have acted under pretense and color of State law and in their individual and official capacities and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983 and by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Defendants have conspired among themselves to do so (taking numerous overt steps in furtherance thereof) and failed to prevent one another from doing so.

52. The City defendants' actions were deliberate, reckless, and indifferent to plaintiffs' constitutional rights.

53. As a direct and proximate result of the misconduct detailed above, plaintiff and the class members have suffered damages in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF –VIOLATION OF TLC RULES –
AGAINST THE CITY DEFENDANTS**

54. Plaintiffs repeat and re-allege paragraphs 1 through 53 as if the same were fully set forth herein.

55. By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice, and custom pursuant to which taxi and for-hire vehicle drivers may have their licenses summarily suspended without any finding by the TLC chair that the driver's licensure continued licensure would constitute a direct and substantial threat to public health or safety, pending revocation proceedings and without any finding of good cause, the City defendants have deprived and will continue to deprive each and every plaintiff and all members of the plaintiff class of rights, remedies, privileges, and immunities guaranteed to every citizen of the United

9

States, in violation of 42 U.S.C. § 1983 and of rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

56. The City defendants have acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983 and by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Defendants have conspired among themselves to do so (taking numerous overt steps in furtherance thereof) and failed to prevent one another from doing so.

57. The City defendants' actions were deliberate, reckless, and indifferent to plaintiffs' constitutional rights.

58. As a direct and proximate result of the misconduct detailed above, plaintiff and the class members have suffered damages in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF – VIOLATION OF THE CITY CHARTER–
AGAINST THE CITY DEFENDANTS**

59. Plaintiffs repeat and re-allege paragraphs 1 through 58 as if the same were fully set forth herein.

60. The enactment of the suspension policies and practices without a compliance with the City Administrative Procedure Act (CAPA) was in contravention of the New York City Charter. As such the policy was void from the outset and all penalties administered thereunder are also void and of no force or effect.

61. Defendants' actions were deliberate, reckless and indifferent to plaintiffs' legal rights.

62. As a direct and proximate result of the misconduct and constitutional violations detailed above, plaintiff and the class members have suffered damages in an amount to be determined at trial.

**FIFTH CLAIM FOR RELIEF / 42 U.S.C. § 1983 – DENIAL OF FAIR WARNING OF THE LAW – AGAINST THE CITY DEFENDANTS**

63. Plaintiffs repeat and re-allege paragraphs 1 through 62 as if the same were fully set forth herein.

64. By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice, and custom pursuant to which taxi drivers may have their licenses suspended without reasonably clear and published standards established by law, the City defendants have deprived and will continue to deprive each and every plaintiff and all members of the plaintiff class of fair notice, due process of law, and the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States in violation of 42 U.S.C. § 1983 and of rights guaranteed by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

65. The City defendants' actions were deliberate, reckless, and indifferent to plaintiffs' legal rights.

66. As a direct and proximate result of the misconduct detailed above, plaintiff and the class members have suffered damages in an amount to be determined at trial.

**SIXTH CLAIM FOR RELIEF/ NEW YORK STATE CONSTITUTION ART. 1, § 6 – AGAINST THE CITY DEFENDANTS**

67. Plaintiffs repeat and re-allege paragraphs 1 through 66 as if the same were fully set forth herein.

68. By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice, and custom pursuant to which taxi and for-hire vehicle drivers may have their licenses summarily suspended without due process of law, defendants have deprived and will

11

continue to deprive each and every plaintiff and all members of the plaintiff class of rights, remedies, privileges, and immunities guaranteed to every citizen of the State of New York in violation of the New York State Constitution, Article 1, § 6. Defendants have conspired among themselves to do so (taking numerous overt steps in furtherance thereof) and failed to prevent one another from doing so.

69. The City defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their rights secured by the New York State Constitution, Article 1, §6. Defendants' actions were deliberate, reckless, and indifferent to plaintiffs' constitutional rights.

70. As a direct and proximate result of the misconduct detailed above, plaintiff and the class members have suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff and the class members request that the Court grant the following relief:

a. An order certifying this action as a class action;

b. A judgment declaring that the City Defendants violated the federal and New York Constitutions;

c. An injunction prohibiting Defendants from engaging further in the policies, practices, and customs complained of herein;

d. Compensatory damages, including damages for lost income, out of pocket expenses and emotional harm, in an amount to be determined at trial;

e. Punitive damages (from LabCorp) in an amount to be determined at trial;

f. An order awarding disbursements, costs, and attorneys' fees; and

  g. Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
October 11, 2017

                 __/s/_____
                 Daniel L. Ackman
                 Law Office of Daniel L. Ackman
                 222 Broadway, 19th Floor
                 New York, NY 10013
                 Tel: (917) 282-8178
                 d.ackman@comcast.net

                 *Attorney for Plaintiff*